# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:12cr13-5

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>Vs. )<br>)<br>ABDUL WHITE, )<br>)<br>**Defendant.** )<br>_____ ) | ORDER |

**THIS MATTER** is before the court on defendant's Notice of Appeal to District Court the Detention Order Entered May 10, 2012. Defendant's appeal comes after his Motion for Reconsideration (#66) of the initial detention determination by Magistrate Judge David S. Cayer (Order (#62)) was denied by Magistrate Judge David C. Keesler. Order (#79).

Defendant is charged along with five others in a superseding bill of indictment filed April 18, 2012 (#71) with a Hobbs Act robbery conspiracy, Hobbs Act robbery, and money laundering conspiracy. These charges arise from an alleged violent home invasion robbery in which guns were brandished, adult victims were restrained, and as much as $1.5 million was stolen, all in the presence of children. It is undisputed that defendant was not present at the robbery, but the government contends that this defendant played a role in robbery by connecting the participants, and was paid or was to be paid as much as $100,000 for his role in the offense.

Initially, defendant was ordered detained by Magistrate Judge David Cayer following a detention hearing on March 27, 2012. At that hearing, the docket reflects the defendant proceeded *pro se*, with attorney Lucky Osho serving as stand-by counsel. Defendant retained attorney Aaron Michel on April 4, 2012.

-1-

On reconsideration,[1] Magistrate Judge David C. Keesler also concluded that bond was not appropriate in this case. The court considered the arguments that defendant has a minor criminal history, that he is employed at a car detailing shop, and that he had family and community support present in the audience at the hearing. Further, Judge Keesler considered defendant's argument that he did not have an actual physical role in the robbery, and that the government's case, as forecast currently, relies significantly on coconspirator testimony, which defendant contends is less-than-reliable.

Judge Keesler weighed such arguments against defendant's alleged role in the offense and found that "there is plenty to be concerned about here." Order (#79), at 2. In particular, Judge Keesler found, as follows:

> Whether the Defendant was present or not, this was allegedly a violent home invasion-style robbery in which firearms were brandished, adult victims were restrained and in one case assaulted, and $1.5 million was stolen – all in the presence of children who were present in the home. The government alleges that the Defendant's role in planning the robbery was important, and he received as much as $100,000 of the spoils, albeit money that has not been recovered. The presumption of detention arises from these serious charges as to all the defendants, regardless of their role, and currently all six defendants are detained.
> The government also asserts that the Defendant essentially attempted by his actions to evade or delay arrest, and together with his girlfriend, engaged in what amounted to a stand-off with authorities at the time and site of his arrest. Albeit before Mr. Michel entered his case, the Defendant defiantly suggested at a prior court proceeding that the Court had no authority over him, and he had an apparently unlicensed lawyer making filings on his behalf. Less important, but worth noting, the Defendant failed to appear for court on one occasion in a 2009 traffic case in North Carolina District Court.
> * * *
> In the judgment of the undersigned, the Defendant simply has not overcome the presumption of detention in this case.

Id. at 2-3.

---

[1] The court notes that the two magistrate judges in Charlotte alternate duty weeks, which at times causes the reconsideration of detention to be conducted by a magistrate judge other than the one who made the initial determination.

Inasmuch as the pleadings submitted by defendant and the previous response of the government adequately address the issues underlying defendant's detention, oral arguments and further briefing would not aid the decision-making process. The court will resolve this motion for review on the pleadings.

In accordance with Section 3145(b), the court has promptly considered the appeal from such detention Order. The court has considered the initial determination of Judge Cayer and the Order on reconsideration of Judge Keesler in light of defendant's arguments contained in his Notice of Appeal. Essentially, defendant has reasserted in his appeal the arguments he posed in Motion for Reconsideration (#66). The government's Memorandum in Opposition (#76) to the Motion for Reconsideration is, thus, fully responsive to the Notice of Appeal. In its response, the government proffered the following facts in support of defendant's continued detention:

> Specifically, Osman White, Leo McIntyre, and Roderick Hardin were incarcerated together at the Mecklenburg County Detention Center. Through telephone calls from the Detention Center and other means, these three made contact with defendant White and Tim Donahue. Osman White instructed Hardin and McIntyre to make contact with defendant White when they were released from jail and indicated that defendant White would then put Hardin and McIntyre in contact with Donahue, who would identify the target and location. It is believed that Donahue suggested targeting the victims at issue in the charged robbery, as Donahue had recently done work at the victim's auto business/home, through his work in the glass business. Thereafter, contact with defendant White did occur, and Donahue did identify the victims and location. When McIntyre was not able to conduct the actual robbery, Sutton was brought into the conspiracy.
> Ultimately, Hardin and Sutton traveled from Mecklenburg County to Mooresville, where they physically robbed the victims of approximately $1.5 million by accosting his family at gunpoint and restraining two adults in the presence of young children, and then forcing a third adult to open a safe in the family home. When the third adult resisted, he was struck with a firearm and told that if he resisted again, his family would be killed. McIntyre provided the pair with at least one firearm. Hardin and Sutton possessed a shotgun and silver handgun at the time of the robbery.
> The approximately $1.5 million in U.S. currency stolen came from the victims' car dealership/junkyard business, which adjoined the family home and

which Sutton and Hardin referenced when arriving at the property. The business sells used vehicles and distributes motor vehicle parts nationwide and to Puerto Rico. The business also buys and receives vehicles from auctions in several states, including Virginia and Georgia, which vehicles are brought to North Carolina. The victims store money from the business in the family home, which is co-located on the same property. Thereafter, Sutton and Hardin traveled with the money back to Mecklenburg County, where it was divided amongst the conspirators. Identification of the defendants occurred due to a tip from a reliable CI, who led law enforcement to a storage unit off Monroe Road in Charlotte, where $550,000 in U.S. currency was recovered, along with storage totes that belonged to the family and which had been stolen when Sutton and Hardin realized that the bag that they had brought was not large enough to contain all of the currency. The remaining $1 million in U.S. remains missing and is the subject of an ongoing investigation. It is believed that the defendants either possess or know the whereabouts of this money.

Memorandum in Opposition (#76), at 4-5 (footnote omitted). Such proffer ameliorates the concerns raised in defendant's appeal, including defendant's contention that "[t]he fact that location of the robbery was a residence and the persons robbed were residents of the home suggests that this is not a Hobbs Act violation." Notice of Appeal (#82), at 3. Indeed, the government noted that "[t]he victims' home and business are co-located." Memorandum in Opposition (#76), at f.n. 1. Clearly, the government has proffered clear and convincing evidence that defendant is a danger to the community and the court can find no merit to defendant's contention that the government lacks evidence of an interstate nexus.

As to defendant's contention that he is not a flight risk, the government has proffered evidence that prior to his arrest, defendant had been a fugitive for a period of months, repeatedly failed to recognize the authority of the court and, as such, was a flight risk. Indeed, defendant's conduct at the time of arrest is inconsistent with his contention that he is not a flight risk. The government proffered evidence that defendant was arrested on March 15, 2012 by the Charlotte Mecklenburg Police Department's Violent Criminal Apprehension Team (hereinafter "VCAT"). After visiting several locations, officers arrived at a home on Batavia Lane at which defendant's girlfriend, Ms. Sheppard, resided. Although individuals

were observed peering out of an upstairs bedroom window, and despite repeated knocks, loud announcements of police presence, and multiple members of law enforcement visible outside, the individuals inside did not respond. Approximately two hours later, during which time surveillance was maintained, a female arrived, knocked, and was admitted to the residence. Thereafter, this female left, was stopped, and informed VCAT that she was Sheppard's cousin; that defendant was Sheppard's boyfriend and often stayed at the residence; and the room from which individuals had been looking out was Sheppard's bedroom where defendant stayed.

This female agreed to telephone her mother, who was present in the residence, and ask if defendant was present. The female called and confirmed that defendant was in the upstairs bedroom and asked her mother to open the door for law enforcement. The mother did open the door for VCAT, and Sheppard appeared at the top of an internal staircase, appearing nervous, before looking back into the bedroom and closing the door. When asked where Abdul was, Sheppard became defensive and stated "I don't know any Abdul." The mother/aunt standing behind Sheppard began nodding in the affirmative and looking upstairs, clearly indicating that defendant was in Sheppard's room.

When VCAT asked Sheppard and a young boy to step outside, Sheppard became hostile, pushing the mother/aunt and child behind her, and attempting to slam the door. Sheppard was ultimately arrested for Resisting, Delaying and Obstructing detectives and was combative during the arrest. VCAT then began giving orders for defendant to exit the room and, after several minutes, he exited and was taken into custody. Defendant's ex-wife and her husband indicated to law enforcement that the entire family had become aware of the robbery and charges when news coverage named him and described the robbery. The government proffered evidence that defendant knew at the time of arrest that he had been

charged and significantly altered his behavior in an attempt to avoid arrest.

Review of a magistrate judge's Order of Detention is governed by 18, United States Code, Section 3145(b)&(c), which provides as follows:

> **(b) Review of a Detention Order.**— If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b).

In considering such motion, the court has closely reviewed not only defendant's motion, but the government's Memorandum in Opposition to the Motion for Reconsideration. The Magistrate Judge's determination that defendant should be detained pending trial is fully supported by such proffer, which provides clear and convincing evidence that this defendant conspired with others to commit a violent home invasion against vulnerable victims. Further, such proffer equally shows that defendant, knowing that he had been charged in this matter, created a volatile and prolonged standoff with law enforcement officers, during which officers or members of his family could have been harmed. Further, there is ample evidence that supports the Magistrate Judge's conclusion that, despite defendant's substantial ties to the community and relatively minor criminal history, there is a serious risk that defendant will not appear as not only did he frustrate arrest and subsequently fail to recognize the court's authority, he has a record of failing to appear when summonsed for court inasmuch as defendant failed to appear for court on one occasion in a 2009 traffic case in North Carolina District Court.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's "Notice of Appeal to District Court the Detention Order Entered May 10, 2012" (#82), having been fully considered and deemed to be a request for review of the Order of Detention, is **DENIED** and the court reaffirms and adopts the Order of Detention entered by the Magistrate Judge Keesler in this matter as it is fully supported by the record, is consistent with law, and supported by clear and convincing evidence.

Signed: May 18, 2012

Max O. Cogburn Jr.
United States District Judge